United States District Court
Southern District of Texas
**ENTERED**
July 19, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAVERNE NATALIE CARROLL DAILEY, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-1957 |
| | § | |
| CERTAIN UNDERWRITERS AT | § | |
| LLOYDS LONDON, SUBSCRIBING TO | § | |
| POLICY NUMBER V605436, | § | |
| | | |
| Defendant. | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a first-party insurance case involving a Lloyd's of London policy. The policyholder, Plaintiff Laverne Natalie Carroll Dailey ("Dailey"), invoked the appraisal clause in the parties' insurance contract and then, dissatisfied with the result, filed this lawsuit in Texas state court seeking to set aside the appraisal award. (Dkt. 1-1). The carrier, Defendant Certain Underwriters at Lloyd's London, Subscribing to Policy Number V605436 ("Enstar"),[1] removed the case to this Court. (Dkt. 1).

---

[1] The Court is referring to the defendant as "Enstar" instead of "Lloyd's" because of the unique nature of lawsuits involving Lloyd's of London. Lloyd's of London "is not an insurance company but rather a self-regulating entity which operates and controls an insurance market." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857–58 (5th Cir. 2003). "Thus, a policyholder insures *at* Lloyd's but not *with* Lloyd's." *Id*. (emphasis in *Corfield*). The individuals and corporations who finance the Lloyd's insurance market and ultimately insure risks are called "Names," and they group together in "Syndicates" that underwrite insurance policies on behalf of the Names in the Syndicate. *Id*. So, when an insured "receives a Lloyd's 'policy' of insurance, what he has in fact received are numerous contractual commitments from each Name who has agreed to subscribe to the risk." *Id*. at 859. Here, as discussed further later in this opinion, the record shows that Dailey's policy has been fully reinsured to close by Lloyd's Syndicate 2008, the sole Name of which is SGL No. 1 Limited ("SGL"). (Dkt. 23-1). SGL is a subsidiary of Enstar Group Limited ("Enstar Group"). (Dkt. 23-1). The Court will refer to SGL and Enstar Group collectively as Enstar.

Dailey has filed a motion requesting that the Court remand the case to state court, while Enstar has filed a combination motion for summary judgment and motion to dismiss requesting that the Court either dismiss the case as time-barred under Federal Rule of Civil Procedure 56 or dismiss the case for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons outlined below, Dailey's motion to remand (Dkt. 22) is **DENIED**, and Enstar's motion (Dkt. 30) is **GRANTED IN PART AND DENIED AS MOOT IN PART**. The Court concludes that this case is time-barred, and the case is **DISMISSED WITH PREJUDICE**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Dailey's home in Houston was damaged by Hurricane Harvey in August of 2017. (Dkt. 1-1 at p. 12; Dkt. 31-7 at p. 2). She made a claim under her homeowners insurance policy, and Enstar hired Minuteman Adjusters ("Minuteman") and Specialty Adjusting International ("Specialty") to handle the claim. (Dkt. 1-1 at p. 13; Dkt. 31-7 at p. 2). Specialty inspected Dailey's home, and after that inspection Enstar paid $1,883.06 on Dailey's claim. (Dkt. 31-5 at p. 2; Dkt. 31-7 at p. 2). Shortly thereafter, Dailey reported mold damage. (Dkt. 31-7 at p. 2). On January 5, 2018, Enstar sent a letter to Dailey denying any further payment based on a mold exclusion in Dailey's policy. (Dkt. 31-7 at p. 2). Enstar then closed the claim. (Dkt. 31-7 at p. 2).

Dailey invoked the appraisal clause in her policy on March 29, 2018. (Dkt. 31-7 at p. 3). As is common in Texas property insurance policies, the appraisal clause provided a binding method of setting the amount of a loss whereby the policyholder and the carrier would each "select a competent, independent appraiser" to evaluate the loss. (Dkt. 23-4 at

p. 17). The two appraisers would then "choose an umpire" to resolve disagreements between them. (Dkt. 23-4 at p. 17). "An itemized decision agreed to by any two of th[e] three and filed with [the carrier] w[ould] set the amount of the loss." (Dkt. 23-4 at p. 17). "Such award [would] be binding on [the policyholder] and [the carrier]." (Dkt. 23-4 at p. 17).

In accordance with the appraisal clause, Dailey made a written demand for appraisal and designated an appraiser. (Dkt. 30-2 at p. 1). Minuteman, acting on Enstar's behalf, agreed to go to appraisal and designated an appraiser. (Dkt. 30-3 at p. 1). The appraisers selected an umpire, who, after the inspection of Dailey's home, agreed with Minuteman's appraiser. (Dkt. 31-5 at p. 5). The umpire and Minuteman's appraiser provided an itemized decision setting the "Full Replacement Cost" for the damage to Dailey's home at $47,952.31. (Dkt. 31-5 at pp. 5–18). The award also specified that "Depreciation" totaled $19,642.29 and that "ACTUAL CASH VALUE" (replacement cost minus depreciation) totaled $28,310.02:

| | DWELLING |
|---|---|
| Full Replacement Cost | $47,952.31 |
| Depreciation | $19,642.29 |
| ACTUAL CASH VALUE | $28,310.02 |

Dkt. 31-5 at p. 5.

The appraisal award was signed by Minuteman's appraiser on February 8, 2019 and signed by the umpire on February 14, 2019. (Dkt. 31-5 at p. 5).

Through Minuteman, Enstar sent a letter to Dailey on February 18, 2019 enclosing payment for the appraisal award, meaning the full replacement cost ($47,952.31) less Dailey's deductible ($11,680.58), recoverable depreciation ($19,642.29), and the prior payment of $1,883.06. (Dkt. 31-5 at p. 2). The total came to $14,746.38. (Dkt. 31-5 at p. 2). The letter explained that Dailey could make a supplemental claim for the $19,642.29 in withheld recoverable depreciation after "all covered repairs or replacement [we]re complete." (Dkt. 31-5 at p. 2). But the letter also made clear that Enstar considered the total amount of loss to be definitively set by the appraisal award and that the only additional payment that Enstar would consider issuing would be the withheld recoverable depreciation:

> After applying recoverable depreciation of $19,642.29, your deductible of $11,680.58, and previous payment of $1,883.06, your Net Actual Cash Value claim is $14,746.38. Enclosed please find our check in the amount of $14,746.38.
>
> . . .
>
> Your policy states that [Enstar] will not be liable for more than the Actual Cash Value of the property until all covered repairs or replacement are complete. Actual Cash Value is defined as Replacement Cost less depreciation. If all covered repairs/replacement are made, you may make a supplemental claim for up to the amount of withheld depreciation per the policy terms and conditions for Replacement Cost coverage. Please understand further claim is [sic] subject to all policy terms and conditions, supplemental inspections, and/or documentation in support of supplemental claim. [sic] The total amount of withheld recoverable depreciation available is $19,642.29.
>
> Dkt. 31-5 at p. 2.

Enstar did include language in the letter stating that it would give "full consideration" to "any comments or further information" submitted by Dailey, but the letter clarified that Enstar "d[id] not waive" and "expressly reserved" its "rights, defenses and privileges afforded by the [insurance] policy or by law[.]" (Dkt. 31-5 at p. 2).

The record does not reflect any additional communication between the parties until fourteen months later, when Dailey sent a pre-litigation notice letter[2] to Enstar on April 2, 2020. (Dkt. 31 at p. 8). The letter demanded that Enstar set aside the appraisal award and pay $147,502.60 to settle her claim. (Dkt. 31 at p. 8; Dkt. 31-7 at p. 3).

Enstar responded by letter on May 13, 2020. (Dkt. 31-7). The letter "respectfully declined" Dailey's demand and explained that Dailey had provided "no basis for setting aside" the appraisal award. (Dkt. 31-7 at pp. 3–4). As it did in its February 2019 letter, Enstar offered to consider "any additional information" provided by Dailey. (Dkt. 31-7 at p. 4). Enstar also requested a reinspection of Dailey's home "pursuant to the Texas Insurance Code[.]"[3] (Dkt. 31-7 at p. 4). However, Enstar again clarified that its statements did not constitute "a waiver of any legal claims or defenses" and that it was not at that point "reconsidering [its] position" that the appraisal award was "binding and enforceable" and

---

[2] See Tex. Ins. Code § 542A.003(a) ("In addition to any other notice required by law or the applicable insurance policy, not later than the 61st day before the date a claimant files an action to which this chapter applies in which the claimant seeks damages from any person, the claimant must give written notice to the person in accordance with this section as a prerequisite to filing the action.").

[3] See Tex. Ins. Code § 542A.004 ("Not later than the 30th day after receiving a presuit notice given under Section 542A.003(a) [of the Texas Insurance Code], a person to whom notice is given may send a written request to the claimant to inspect, photograph, or evaluate, in a reasonable manner and at a reasonable time, the property that is the subject of the claim. If reasonably possible, the inspection, photography, and evaluation must be completed not later than the 60th day after the date the person receives the presuit notice.").

that Enstar had "fulfilled its contractual obligations under the insurance policy when it tendered payment in accordance with the appraisal award." (Dkt. 31-7 at pp. 3–4). To the contrary, Enstar's letter unequivocally stated that, "as the [appraisal] award has set the amount of loss, [Dailey], as a matter of law, cannot recover more than the appraisal award even if coverage issues are litigated." (Dkt. 31-7 at p. 3).

Enstar reinspected Dailey's home on July 7, 2020. (Dkt. 31 at p. 8). The record does not reflect any further communications between the parties until March 3, 2021, when Dailey filed this lawsuit in Texas state court alleging breach of contract and violations of Chapters 541 and 542 of the Texas Insurance Code. (Dkt. 1-1 at pp. 15–16; Dkt. 31 at pp. 2, 8). Enstar removed the case to this Court and now seeks summary judgment on the basis of the insurance policy's limitations provision, which reads:

> **Suit against us.** No suit or action can be brought unless the policy provisions have been complied with. Action brought against us must be started within two years and one day after the cause of action accrues.
> Dkt. 30-1 at p. 18.

The policy defines "us" as "the Company providing this insurance"—here, that is Enstar. (Dkt. 30-1 at p. 10).

Dailey has requested a remand to state court based on Enstar's alleged failure to establish that this Court has subject matter jurisdiction under the diversity jurisdiction statute, 28 U.S.C. § 1332. (Dkt. 22 at p. 1).[4]

---

[4] Initially, Dailey also argued that Enstar's removal was untimely. (Dkt. 22 at p. 2). Dailey abandoned that argument in her reply brief. (Dkt. 24 at p. 4).

## II.    SUBJECT MATTER JURISDICTION

The Court will address Dailey's motion to remand before discussing Enstar's motion for summary judgment. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception.") (brackets and quotation marks omitted).

### a.  The legal standard

Generally, a defendant may remove to federal court any state court civil action over which the federal court would have "original jurisdiction." 28 U.S.C. § 1441(a); *see Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007). As relevant here, federal courts have original jurisdiction—commonly referred to as "diversity jurisdiction"—over civil actions between a citizen of a state and citizens of a foreign country in which the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332; *see also Stiftung v. Plains Marketing, L.P.*, 603 F.3d 295, 297 (5th Cir. 2010). The diversity statute requires "complete diversity" of citizenship, meaning that a district court cannot exercise diversity jurisdiction if any plaintiff shares citizenship with any defendant. *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992). "[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). The removing party therefore bears a burden of establishing by a preponderance of the evidence that removal is proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

A defendant meets its burden of establishing the requisite amount in controversy for diversity jurisdiction if: "(1) it is apparent from the face of the petition that the claims exceed $75,000, or, alternatively, (2) the defendant sets forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount." *Id*. Once a defendant meets its burden, "removal is proper, provided plaintiff has not shown that it is legally certain that his recovery will not exceed the amount stated in the state complaint." *De Aguilar v. Boeing Co*., 47 F.3d 1404, 1412 (5th Cir. 1995).

Those are the well-established general rules. The Court must keep in mind, however, that this case involves a Lloyd's of London insurance policy. As mentioned earlier in this opinion, Lloyd's is a market, not an insurance company. The individuals and corporations who finance the Lloyd's insurance market and ultimately insure risks are called "Names," and they group together in "Syndicates" that underwrite insurance policies on behalf of the Names in the Syndicate. *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857–58 (5th Cir. 2003). "Some Syndicates may be composed of one Name, while others may be composed of 30,000 Names." *Those Certain Underwriters at Lloyd's London v. Sophisticated Investments Inc.*, No. 2:20-CV-3592, 2022 WL 507437, at *2 (E.D. Pa. Feb. 18, 2022).

Each Name that subscribes to a particular policy invests in a percentage of the policy risk, and the liability among the Names is several but not joint. *Corfield*, 355 F.3d at 858. Moreover, usually only one Name—a "lead" underwriter designated to represent all of the Names—is listed on the policy, with all other Names remaining anonymous. *Id*. at 858–59. As a result, policyholders bringing first-party insurance claims on Lloyd's of London policies, who often do not have the "highly confidential" information regarding the

identities of most of the underwriting Names, typically list as the defendant "Certain Underwriters at Lloyd's, London Subscribing to" the number of the policy at issue. *Xome Settlement Services, LLC v. Certain Underwriters at Lloyd's, London*, No. 4:18-CV-837, 2020 WL 512507, at *4 & n.2 (E.D. Tex. Jan. 31, 2020). Suing "Certain Underwriters at Lloyd's, London Subscribing to" the number of the policy at issue is considered "synonymous with suing every Name subscribing to the policy since the Names are the underwriters[,]" which allows the policyholder to get all of the underwriters with potential liability on his or her policy into court without knowing all of their identities. *Id*. (collecting cases). That is what Dailey did here.

### b. Enstar has met its burden.

Having considered the evidence in the record under the applicable legal standards, the Court concludes that Enstar has met its burden of showing that the Court has diversity jurisdiction.

The Court allowed limited discovery related to the identities of the Names that subscribed to Dailey's policy. (Dkt. 21). The resultant evidentiary record shows that Dailey's policy was underwritten by Lloyd's Syndicate 1206. (Dkt. 23-1 at p. 4; Dkt. 23-4 at p. 8). Lloyd's Syndicate 1206's underwriting business has been fully reinsured to close by Lloyd's Syndicate 2008. (Dkt. 23-1 at p. 4). Lloyd's Syndicate 2008's sole Name is SGL, which is a subsidiary of Enstar Group. (Dkt. 23-1 at p. 4). SGL is domiciled in the United Kingdom, and Enstar Group is domiciled in Bermuda. (Dkt. 23-1 at p. 4). Dailey is a citizen of Texas. (Dkt. 1-1 at p. 11). Accordingly, this action is between a citizen of a

state and citizens of foreign countries, and Dailey does not share citizenship with any defendant.

As for the amount-in-controversy requirement, Dailey sought "monetary relief over $200,000 but not more than $1,000,000" in her state-court pleadings. (Dkt. 1-1 at pp. 1, 10). Furthermore, in her pre-litigation notice letter, Dailey made a liquidated settlement demand of $147,502.60. (Dkt. 31-7 at p. 3). The total amount in controversy is greater than the $75,000 jurisdictional minimum, and Dailey's policy is fully backed by one Name, SGL.

The Court has subject matter jurisdiction under 28 U.S.C. § 1332.

### III.    THE STATUTE OF LIMITATIONS

Enstar seeks summary judgment under Federal Rule of Civil Procedure 56 on the affirmative defense of the statute of limitations. (Dkt. 30).

#### a.  Summary judgments

In deciding a motion for summary judgment, the Court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant's initial summary judgment burden depends on whether the movant will bear the burden of proof at trial. If the non-movant will bear the burden of proof at trial on an issue raised in a motion for summary judgment, then the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347,

349 (5th Cir. 2005). The movant need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). However, if the movant will carry the burden of proof at trial, as is the case when the movant is either the plaintiff or a defendant asserting an affirmative defense, then the movant can only carry its initial burden by establishing beyond peradventure all of the essential elements of its claim or defense. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

If the movant meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted). In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from those facts must be reviewed in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

### b.  Enstar has not waived its limitations defense.

Before reaching the merits of Enstar's motion for summary judgment, the Court must address a point very briefly raised by Dailey in her response to Enstar's motion: Enstar had not pled a limitations defense when it filed its motion for summary judgment.

(Dkt. 31 at p. 2). Enstar filed an answer in state court but did not plead its limitations defense. (Dkt. 1-2 at pp. 1–7). Enstar then removed this case and moved for summary judgment on limitations. (Dkt. 1; Dkt. 30). When Dailey pointed out that Enstar had not pled a limitations defense, Enstar amended its answer to include that defense just before it filed its reply brief. (Dkt. 32; Dkt. 33).

The propriety of Enstar's amendment is not at issue. The governing docket control order allowed Enstar to amend its answer without leave of court at the time that it added its limitations defense (Dkt. 27), and Dailey has not moved to strike Enstar's amended answer. The question raised by Dailey's response is simply whether Enstar waived its affirmative defense by failing to plead that defense before filing its motion for summary judgment.

The Court concludes that Enstar did not waive its limitations defense. Federal Rule of Civil Procedure 8(c) requires a party responding to a pleading to "affirmatively state any avoidance or affirmative defense, including . . . statute of limitations[.]" Fed. R. Civ. P. 8(c). Failure to follow this rule can result in waiver of the affirmative defense. *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir. 1983). "Where the matter is raised in the trial court in a manner that does not result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal." *Id.* at 855–56. "The defendant does not waive an affirmative defense if the issue is raised at a pragmatically sufficient time, and if the plaintiff was not prejudiced in its ability to respond." *Smith v. Travelers Casualty Insurance Co. of America*, 932 F.3d 302, 309 (5th Cir. 2019) (brackets and quotation marks omitted). "[T]he prejudice inquiry considers whether the plaintiff had sufficient notice to

prepare for and contest the defense, and not simply whether the defense, and evidence in support of it, were detrimental to the plaintiff (as every affirmative defense is)." *Rogers v. McDorman*, 521 F.3d 381, 387 (5th Cir. 2008).

Enstar's limitations defense was raised in time, and Dailey was not prejudiced in her ability to respond. In her response to Enstar's motion, Dailey squarely contests Enstar's limitations defense on the merits, and Dailey has not requested additional time or additional fact discovery to respond to Enstar's motion, even though Enstar filed its motion over six months before the discovery deadline and the discovery deadline still has not passed. *Cf. Lafreniere Park Foundation v. Broussard*, 221 F.3d 804, 808 (5th Cir. 2000) (concluding that a res judicata defense that was never pled in an answer and was only raised in a motion for summary judgment was not waived because the opposing party filed three opposition memoranda seeking to defeat the defense on the merits). Furthermore, the parties agree on the timeline regarding Enstar's limitations defense; there is no factual dispute regarding who said what to whom, or when or in what form those things were said. The disagreement between the parties is over the legal effects of the parties' various communications with each other. The Court concludes that Enstar did not waive its limitations defense.

### c.  Dailey's causes of action are time-barred.

Dailey has pled causes of action against Enstar for breach of contract and violations of Chapters 541 and 542 of the Texas Insurance Code. (Dkt. 1-1 at pp. 15–16). Dailey's insurance contract creates an enforceable limitations period for lawsuits against Enstar of two years and one day after the cause of action accrues. (Dkt. 30-1 at pp. 10, 18). Both parties agree that the applicable limitations period is two years and one day. (Dkt. 30 at p.

3; Dkt. 31 at p. 2). Dailey filed her state-court lawsuit on March 3, 2021. (Dkt. 1-1 at p. 1). Accordingly, Dailey's causes of action are time-barred if they accrued before March 2, 2019.

In Texas, causes of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy. *Smith*, 932 F.3d at 311. A cause of action generally accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. *Id*. Generally, in first-party insurance cases such as this one, the limitations period begins to run on the date coverage is denied. *Id*. Although the denial-accrual date is usually a question of law, the Texas Supreme Court has acknowledged that it may present questions of fact to be determined on a case-by-case basis. *Id*.; *see also Provident Life and Accident Insurance Co. v. Knott*, 128 S.W.3d 211, 221–22 (Tex. 2003).

Enstar argues that, as a matter of law, the running of limitations was triggered on February 18, 2019, when Enstar sent its letter enclosing payment of the appraisal award and informing Dailey that it would not pay any other amount except, possibly, the $19,642.29 in withheld recoverable depreciation calculated during the appraisal process. (Dkt. 30 at p. 6; Dkt. 33 at p. 3). In response to Enstar's argument, Dailey contends that her case is one in which the denial-accrual date presents questions of fact. (Dkt. 31 at p. 3). According to Dailey, only an "outright denial" of a claim conclusively establishes the accrual date in a first-party insurance case, and there was no outright denial of her claim until Enstar rejected Dailey's pre-litigation settlement demand on May 13, 2020. (Dkt. 31 at pp. 3–5). Dailey argues that Enstar's February 18, 2019 letter "did not deny any part of

[her] claim" and "simply tendered payment of the appraisal award." (Dkt. 31 at p. 3). In an unsworn declaration, Dailey testifies that she "did not know that [Enstar] considered payment of the appraisal award the final payment on [her] claim" until Enstar rejected Dailey's pre-litigation settlement demand. (Dkt. 31-3). To explain her confusion, Dailey points to "special note" language in the appraisal award itself[5] that she claims led her "to reasonably believe that payment of the appraisal award was simply an interim payment on her claim." (Dkt. 31 at pp. 3–4).

The Court agrees with Enstar and disagrees with Dailey. First, Dailey's insistence that only an outright denial of a claim can conclusively establish the accrual date in a first-party insurance case brought under Texas law is simply incorrect; the date on which a carrier tendered its last payment on an insurance claim can also—and often does—conclusively establish the accrual date. *See Castillo v. State Farm Lloyds*, 210 Fed. App'x 390, 393–94 & n.6 (5th Cir. 2006) ("Castillo argues that because State Farm made partial payments without any indication of finality, the statute of limitations did not begin to run until, at the earliest, July 28, 2003, when State Farm sent a letter [in response to a settlement offer from Castillo's attorney] stating that 'the claims remained closed.' However, State Farm communicated a final determination on all of Castillo's claims by March 31, 2003, when State Farm sent the payments on the kitchen and bathroom claims, along with

---

[5] The language relied on by Dailey reads:

> SPECIAL NOTE: Nothing contained within this Agreed Appraisal shall be construed as estopping Certain Underwriters at Lloyds, London or the Named Insured from asserting coverage determinations either in denial of certain portions of the loss or, in the alternative, coverage's [sic] afforded within the applicable policy for insurance.
> Dkt. 31-5 at p. 5.

decision letters on both claims. This was the last payment made to Castillo.") (footnote omitted); *see also, e.g., Abedinia v. Lighthouse Property Insurance Co.*, No. 12-20-00183-CV, 2021 WL 4898456, at *5 (Tex. App.—Tyler Oct. 20, 2021, pet. filed); *Sheppard v. Travelers Lloyds of Texas Insurance Co.*, No. 14-08-00248-CV, 2009 WL 3294997, at *7 (Tex. App.—Houston [14th Dist.] Oct. 15, 2009, pet. denied). "For a first party insurance breach of contract claim, the action accrues when the insurance company sends a letter to the insured detailing its decision to deny the claim *or its decision to pay the claim with payment included which the insured disagrees with*, as long as the insurance company never changes its position on the claim." *Tobin Endowment v. Great American Assurance Co.*, No. 5:20-CV-1146, 2022 WL 817895, at *5 (W.D. Tex. Mar. 17, 2022) (collecting cases) (emphasis added).

Second, Enstar's February 18, 2019 letter enclosing post-appraisal payment unequivocally stated: (1) that Enstar considered the total amount of loss to be definitively set by the appraisal award; and (2) that the only additional payment that Enstar would consider issuing to Dailey would be the withheld recoverable depreciation as calculated in the appraisal award. There is absolutely no evidence in the record indicating that Enstar ever changed its position on Dailey's claim that Enstar set forth in the February 18, 2019 payment letter. Accordingly, Dailey's causes of action accrued on February 18, 2019.

Because there is no evidence that Enstar ever changed its position on Dailey's claim after February 18, 2019, neither Dailey's April 2, 2020 pre-litigation notice letter nor Enstar's May 13, 2020 response to the pre-litigation notice letter affected the accrual date or the running of the limitations period. *Castillo*, 210 Fed. App'x at 394 ("We agree with

the district court that letters from Appellant's counsel requesting, *inter alia,* that State Farm reopen the claims do not toll or extend the limitations period following the claims decisions. Although State Farm was willing to review additional information submitted by Appellant's attorney, State Farm never changed its position on any of the claims after the final decision letters were issued on March 31, 2003.") (citation omitted); *see also De Jongh v. State Farm Lloyds*, 664 Fed. App'x 405, 409 (5th Cir. 2016) ("Under Texas law, De Jongh's cause of action accrued on July 12, 2012, when State Farm closed the claim file. The accrual date remains unchanged, even though State Farm reopened the claim upon De Jongh's request.") (citation omitted). For the same reason, the pre-litigation inspection that Enstar conducted under Section 542A.004 of the Texas Insurance Code after it received Dailey's pre-litigation notice letter did not affect the accrual date or the running of the limitations period. *Pace v. Travelers Lloyds of Texas Insurance Co.*, 162 S.W.3d 632, 635 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("[T]o whatever extent the April 26 decision was reconsidered by Travelers based on the additional information, there is no evidence that that decision was ever expressly or impliedly withdrawn or changed, such as by making payment or otherwise taking action inconsistent with that decision."); *see also Rodriguez v. State Farm Lloyds*, No. 5:17-CV-161, 2018 WL 3966270, at *3 & n.2 (S.D. Tex. Aug. 17, 2018) ("Reinvestigation itself is insufficient to show a prior decision's withdrawal or change.") (collecting cases).

Finally, again for the same reason, Dailey cannot create a genuine issue of material fact regarding the accrual date or the running of the limitations period by swearing to her purported reliance on the "special note" language in the appraisal award itself. The "special

note" language[6] clarifies that the appraisal process, as is the general rule, only sets the amount of the loss and leaves liability and coverage issues for the courts. *See State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 889–90 & n.19 (Tex. 2009) (reaffirming "the proposition that appraisal binds the parties to have the extent or amount of the loss determined in a particular way, leaving the question of liability for such loss to be determined, if necessary, by the courts") (quotation marks omitted). The "special note" language does not alter or amend the insurance policy's stipulations that the appraisal process sets the amount of loss and is binding on Enstar and Dailey. The insurance policy unambiguously provides that it can only be amended by "attaching a written endorsement [to the policy] properly executed by [Enstar's] authorized agent." (Dkt. 30-1 at p. 22). In any event, the "special note" language, assuming that Enstar somehow adopted it, does not give any indication whatsoever that Enstar would at any point consider paying more than the amount of the appraisal award. Enstar's February 18, 2019 payment letter was clear enough to put Dailey on notice of Enstar's position regarding her claim, and Dailey's alleged confusion about the letter's meaning did not affect the accrual date of Dailey's causes of action or the running of the limitations period. *See Grayson v. Lexington Insurance Co.*, No. 3:15-CV-120, 2016 WL 4733447, at *2 (S.D. Tex. Sept. 12, 2016) ("Grayson argues that it was not clear that Lexington had a made a final decision to deny her claim until it paid only the holdback amount and not the remainder of the policy limits. This Court does not doubt that Grayson may believe that, but under the applicable law that

---

[6] *See* footnote 5.

belief is clearly unreasonable given the facts in this case. Consequently, the Court finds that Grayson's breach of contract claim was untimely filed.") (citation omitted).

Having examined the record and the applicable law, the Court concludes as a matter of law that Dailey's causes of action accrued on February 18, 2019. None of the communications between or actions of the parties after that date tolled or reset the limitations period. Since Dailey did not file her lawsuit until March 3, 2021, her lawsuit fell outside of the two-year-and-one-day limitations period provided in her insurance contract with Enstar.

## IV.   <u>CONCLUSION</u>

For the reasons outlined above, Dailey's motion to remand (Dkt. 22) is **DENIED**. Enstar's combination motion for summary judgment and motion to dismiss (Dkt. 30) is **GRANTED IN PART AND DENIED AS MOOT IN PART**. The Court concludes that this case is time-barred, and the case is **DISMISSED WITH PREJUDICE**.

SIGNED at Houston, Texas on July 19, 2022.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE